UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONIA ANN SIAKALA,

     Plaintiff,

v.                         Case No.:  8:22-cv-02464-NHA

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## **ORDER**

Plaintiff asks the Court to reverse Defendant's denial of her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff argues that the Administrative Law Judge (ALJ) erred at both Step Four and Step Five of the evaluation of her eligibility. Specifically, she alleges: (1) the ALJ erred at Step Four by mischaracterizing Plaintiff's past work and, as a result, finding Plaintiff could still perform the work, and (2) the ALJ erred in her analysis at Step Five by using the incorrect age for Plaintiff and by finding that the jobs identified by the vocational expert ("VE") existed in sufficient numbers in the national economy. Defendant concedes the ALJ erred at Step Five by mistaking Plaintiff's age, but argues the error was harmless. Defendant asserts that, because the ALJ properly found that Plaintiff could

1

perform her past work at Step Four, the ALJ could find Plaintiff not disabled without reaching Step Five. After reviewing the parties' briefing and the record below, I find a lack of substantial evidence supporting the ALJ's finding that Plaintiff could perform her past work. Given the agreement as to the ALJ's error at Step Five, I remand the case to the Social Security Administration ("SSA") for further proceedings.

## I.   Background

Relevant here, Plaintiff indicated on her disability reports that she worked from April 2013 to November 2013 as a "packer" at a paper manufacturer. R. 360, 971. Plaintiff testified that her job was to move individual paper products (i.e., paper towels, napkins, toilet paper) from one machine into another machine, where those products would be packaged. R. 36-37. Plaintiff reported that, when she was a packer, she worked four 10-hour shifts each week (R. 360, 971) and, in each of those shifts, she stood for approximately 8 hours (R. 385; *see also* R. 36 (testifying she stood most of the time)). Plaintiff testified she frequently lifted less than 5 pounds (R. 36-37; *see also* R. 385) but occasionally lifted up to 20 pounds (R. 385).

Plaintiff reported that, due to her frequent standing during her time working as a "packer," she began to experience swelling in her knee. R. 36. An MRI showed that Plaintiff had some mild cartilage loss in her left knee (R. 1088) and Plaintiff was diagnosed with osteoarthritis. R. 1180. In December

2020, a physical consultative examiner noted that Plaintiff wore a left knee brace and suffered from knee pain, but also found that Plaintiff had a normal range of motion and normal strength in her left knee. R. 1180, 1183. Plaintiff testified that her knee sometimes "gave out" (R. 609; *see also* R. 1180), which limited her ability to stand for long periods of time (R. 609).

## II.    Procedural History

Plaintiff applied for DIB on March 26, 2017, and for SSI on July 11, 2017. R. 283-84, 292. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. R. 91 (initial determination as to DIB), 78 (initial determination as to SSI), R. 107 (reconsideration as to DIB), 120 (reconsideration as to SSI). Plaintiff then requested an administrative hearing. R. 146. Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (R. 43-63), and a supplemental hearing to obtain testimony from a vocational expert (R. 32-42). Following the hearings, on January 28, 2020, the ALJ found Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 15-25. Plaintiff then appealed the ALJ's decision to the Appeals Council, which denied the appeal. R. 1-3. Plaintiff next appealed to this Court. *Munoz v. Kljakazl*, 8:20-cv-1885-AAS (Doc. 1). In October 2021, this Court remanded the case to the Social Security Administration ("SSA"), finding the ALJ erred when she failed to order a

3

physical consultative examination after stating at the hearing that one was necessary. R. 880.

While her claim was on appeal with this Court, and because her conditions were worsening (R. 274), Plaintiff filed a subsequent claim for DIB on August 31, 2020. R. 923. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. R. 664, 686. Plaintiff then requested a hearing R. 811. Prior to the hearing, Plaintiff informed the SSA of the remand of the denials of her prior applications. R. 871.

In response, on January 27, 2022, the SSA's Appeals Counsel ordered the ALJ to consolidate all the claim files (i.e., the 2017 DIB and SSI filings and the 2020 DIB filing) and issue a new decision on the consolidated claim. R. 705. The ALJ held a hearing on the consolidated claim on June 10, 2022. R. 605-621.

The ALJ used the Social Security Regulations' five-step, sequential evaluation process to determine whether Plaintiff was entitled to SSI or DIB under the consolidated claim. R. 580-81. That process analyzes:

1) Whether the claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled;

2) If not, whether the claimant has a severe impairment or combination of impairments. If not, the claimant is not disabled;

3) If so, whether the impairment(s) meet(s) or equal(s) the severity of the specified impairments in the Listing of Impairments. If so, the claimant is disabled;

4) If the impairment does not meet that level of severity, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his or her past relevant work despite the impairment. If so, the claimant is not disabled; and

5) If not, whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date. R. 582.

2) Plaintiff did have severe impairments, specifically, "osteoarthrosis, depression, and post-traumatic stress disorder." *Id.*

3) Notwithstanding the noted impairments, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

5

4) Plaintiff's RFC allowed her to perform medium work subject to certain limitations: she could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; climb ramps and stairs occasionally; perform simple, routine and repetitive tasks; make simple work-related decisions; interact with supervisors; interact with coworkers and the general public occasionally; and tolerate changes in the simple work setting. R. 584-85. She could never climb ladders, ropes, or scaffolds or work with or near unprotected heights or moving mechanical parts. R. 585. And she must avoid hazards in the workplace, such as heights and heavy machinery. *Id.* Considering Plaintiff's noted impairments and the assessment of a VE, Plaintiff had the RFC to perform her past relevant work as a Packer. R. 590.

5) Plaintiff could also perform the jobs of small product sorter, inspector, and factory helper, which jobs existed in substantial numbers in the national economy. R. 591.

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled. R. 592.

Plaintiff timely filed a complaint with this Court seeking reversal of the opinion.[1] Compl. (Doc. 1). Plaintiff filed a brief opposing the Commissioner's decision (Doc. 16) and the Commissioner responded (Doc. 17). Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.   Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support

---

[1] Due to the remand previously issued in the case, and because the Appeals Council did not assume jurisdiction, the ALJ's decision became the final decision. 20 C.F.R. §§ 404.984(d), 416.1484(d).

a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV.  Analysis

Plaintiff alleges the ALJ committed two errors: (1) the ALJ erred at Step Four by assigning the wrong job as defined by the Dictionary of Occupational Titles ("DOT") to Plaintiff's past work and then finding that Plaintiff could

perform her past work and, (2) the ALJ erred at Step Five both by relying on the incorrect age for Plaintiff, who turned 50 years old after the hearing and days before the ALJ's decision, and by finding that there were other jobs that Plaintiff could perform that existed in substantial numbers in the national economy. Defendant responds that Plaintiff failed to carry her burden of showing at Step Four that she could not perform her past relevant work, and asserts that the Court's analysis should end there. Defendant concedes that Plaintiff turned 50 years old prior to the ALJ's decision, therefore making the ALJ's analysis at Step Five erroneous. Def. Br., Doc. 17. Thus, the only issue for the Court's determination is whether the ALJ erred at Step Four by finding that Plaintiff could perform her past work.

A. <u>Applicable Law</u>

At Step Four, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is the most an individual can still do despite any limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining the RFC, the ALJ must take into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. 20 C.F.R. §§ 404.1545(a), 416.945(a).

Then, the ALJ must compare the RFC to the demands of past relevant work to determine whether the claimant is still capable of performing that kind of work. Past relevant work is defined as work that a claimant had done within the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1); 416.960(b)(1). The claimant has the burden of showing that her impairments prevent her from performing her past relevant work. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986). However, the Commissioner has a duty to develop a full and fair record, including inquiring into the specific requirements and demands of a claimant's past relevant work. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam). To make this determination, an ALJ will ask a claimant for information about the nature of her prior work. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). A claimant is the primary source for such information, and a claimant's statements regarding the manner in which she performed her past work are "generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62.

The ALJ must determine whether the claimant can perform the functional demands and duties of her past job *as she actually performed it* and, if not, whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national

economy. *See* SSR 82-61; *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986) ("[A] claimant must demonstrate an inability to return to the previous type of work he was engaged in."). An ALJ may rely on information contained in the DOT to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy. *Id.* Ultimately, if a claimant can still do the kind of work she previously performed, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). On the other hand, if an ALJ determines that the claimant cannot perform her past relevant work, the burden shifts to the Commissioner to prove at Step Five that the claimant is capable of performing work that exists in significant numbers in the national economy. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

It is important, during the Step Four analysis, that the ALJ accurately identify a claimant's past work because "[w]hen an ALJ misidentifies a claimant's past relevant work and defines her past relevant work with a description of a job in which she never actually engaged, he effectively proceeds to step five in the sequential analysis," which examines whether the claimant can engage in employment, in occupations other than those claimant previously performed, that exists in substantial numbers in the national economy. *Nazario v. Astrue*, No. 07-61833-CIV, 2009 WL 347424, at *16 (S.D. Fla. Feb. 11, 2009) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Accordingly, at least three circuit courts have remanded cases to the SSA when

11

the ALJ failed to resolve a conflict between a claimant's testimony about his or her prior work and the comparator occupation selected and defined within the DOT. *Lohse v. Shalala*, No. 061694, 1994 WL 263699 (10th Cir. June 16, 1994); *Villa v. Heckler*, 797 F.2d 794 (9th Cir. 1986); *DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir. 1983). These circuit courts have held that, where the claimant's testimony about her prior work does not match the DOT definition of the job that the ALJ ascribes to be the plaintiff's past work, the ALJ has a duty to explain (1) why she rejected claimant's testimony about her prior work or, if she did not, (2) why claimant's prior work could still fairly be categorized as the DOT job that did not match the claimant's description. *Villa*, 797 F.2d at 798-99; *DeLoatche*, 715 F.2d at 151.

B. <u>Analysis</u>

On her disability report, Plaintiff explained that she previously worked as a "packer" at a paper manufacturer from April 2013 to November 2013. R. 360. She said she worked four 10-hour shifts per week, and that she was paid $8.05 per hour. *Id.* Plaintiff also completed a Work History Report as part of her social security benefits application. R. 382-89. There, she again listed her prior work at the paper manufacturer and explained that it required four 10-hour shifts per week, during which shifts she stood for eight hours and frequently lifted less than 10 pounds, but sometimes up to 20 pounds. R. 385.

12

At the December 6, 2019 hearing before an ALJ (before claimant's first appeal to this Court), a vocational expert ("VE") testified that she did not have enough information about Plaintiff's job at the paper manufacturer to categorize it. R. 35-36. So, the VE and the ALJ solicited additional information about the job from Plaintiff. R. 35-38. Plaintiff testified that her prior job as a "packer" at a paper manufacturer was to move paper products (i.e., paper towels, napkins, toilet paper) from one machine onto another machine where those products would be packaged. R. 36-37. In other words, despite Plaintiff's description of her job as a "packer," she did not actually pack anything; rather she moved light paper products from one machine onto another machine. *See* R. 36 (describing her role as a "machine feeder"), 37 (explaining it was also called a "handler" or "material handler"). Plaintiff further testified that she stood "most of the time" and frequently lifted less than 5 pounds. R. 36-37. The VE then categorized her work as Production Helper, as defined by DOT section 691.687-010. R. 38. The VE testified that the Production Helper job generally required a medium level of exertion but noted that Plaintiff was actually performing the work at a light exertional level. R. 38.  In her now-vacated January 28, 2020 decision, the ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels (i.e., had no standing or lifting limitations) and could perform her past relevant work as a Production Worker. R. 20, 24. Plaintiff successfully appealed that decision. R. 881.

13

Following the remand and the consolidation of Plaintiff's claims, on June 10, 2022, the ALJ held another hearing, at which a different VE testified. *Compare* R. 35 *with* R. 613. This VE testified that she reviewed Plaintiff's past work, as outlined on her disability report and her work history form. R. 613. There is no indication that the second VE reviewed Plaintiff's December 6, 2019 testimony concerning her duties in her prior job as a packer (R. 36-37). *See* R. 613-15. And, the VE did not solicit any additional testimony from Plaintiff concerning her prior work. *See* R. 613-615.

This VE concluded that Plaintiff's prior work at the paper manufacturer was that of a Packer, as defined in DOT section 559.687-074. R. 614. The VE testified that it was an unskilled job that required light exertion and could be performed if Plaintiff was limited to sitting for six hours and standing for six hours and further limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently. R. 614-16.

The VE specifically testified that, if Plaintiff was limited to standing for six hours, Plaintiff could perform her prior work as a "Packer" as she actually performed it. R. 616. This is curious given that the work history report—which the VE testified to having reviewed—indicates that Plaintiff stood for eight hours per shift when performing her prior work. R. 385. Plaintiff's counsel did not object to the VE's testimony. *See* R. 613-621.

14

In her decision, at Step Four, the ALJ found that Plaintiff had the RFC to perform medium work with limitations, including that Plaintiff could only lift or carry 50 pounds occasionally and 25 pounds frequently, could sit for six hours in an eight-hour workday, and could stand for six hours in an eight-hour workday. R. 584-85. The ALJ further found that Plaintiff was capable of performing her past relevant work as a Packer, DOT 559.687-074, which the ALJ noted was "light" work with a specifical vocational preparation rating of 2. R. 590. The ALJ found that Plaintiff's prior work as a "Packer" constituted past relevant work (that is, Plaintiff performed the work as substantial gainful activity within the relevant period and for a sufficient duration) and, adopted the VE's testimony, that Plaintiff's RFC allowed her to perform the "Packer" job as she actually performed it and as it was generally performed. R. 590-91. There was no further discussion regarding Claimant's ability to engage in past relevant work.

The Court finds a lack of substantial evidence to support the VE's conclusion that Plaintiff's prior work matches that of a "Packer" as defined by the DOT. DOT 559.687-074. The DOT title for the job corresponding to the DOT 559.687-074 is "Inspector and Hand Packager;" the position is described as:

> Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches,

> discoloration, and flash, and discards defective products. Packs
> inspected product in cartons according to customer specifications,
> and carries cartons to storage area. May attach metal bands to
> bottle tops prior to packing to form necks for bottles and measure
> necks to ensure specified length, using gauge.

Inspector and Hand Packager, DOT 559.687-074. The position is categorized as "light work" and, although the DOT does not specify the sitting/standing requirements, the VE testimony suggested that it could be performed, for at least some of the workday, by sitting. R. 614-615.

There is no evidence in the record to suggest that Plaintiff ever performed the position of "Inspector and Hand Packager," as described by the DOT. Disregarding the position's reference to plastic products, nothing in the records indicates that Plaintiff inspected items or even packed them herself; rather, she moved products from one machine onto another. R. 36-37. And, the record reflects that Plaintiff stood for most of her workday (eight of ten hours) in her prior job as a packer (R. 385), whereas the VE testimony was that the Inspector and Hand Packager position could be performed, at least in part, by sitting. *See* R. 614-615.

The ALJ was required to reconcile these discrepancies. Specifically, before concluding that Plaintiff could engage in the DOT-described position of "Inspector and Hand Packager," as that work is generally and was actually performed, the ALJ need to explain whether and why she was disregarding Plaintiff's written reports and testimony regarding her actual past relevant

work duties. *Villa*, 797 F.2d at 798-99; *DeLoatche*, 715 F.2d at 151. To simply rely on the VE's testimony in the face of the relevant contradictory information in the record about Plaintiff's past relevant work history was error.

Defendant maintains the error with respect to Plaintiff's actual prior work was harmless, because the record demonstrates that Plaintiff could work as a Packer as the work is generally performed. But, there is no evidence in the record to support that conclusion. At the June 2022 hearing, there was no VE testimony concerning how Plaintiff's prior work is generally performed, because the VE testified about the "Inspector and Hand Packager" job, which was not akin to Plaintiff's prior work. Defendant suggests Plaintiff could perform the role of Production Helper, as defined by DOT section 691.687-010, which the VE at the December 2019 hearing found to be Plaintiff's prior work. But there is no VE testimony or DOT explanation to support the conclusion that Plaintiff could perform the Production Helper role if she was limited to standing for six hours in an eight-hour workday.[2] Thus, the error was not harmless.

---

[2] Moreover, this job does also not appear to be Plaintiff's prior work. The job is described as follows:

> Performs any combination of following duties in fabricating and insulating electric wire and cable: Ties pull ropes, attached to cables emerging from extruding machines, onto takeoff reels, and coils cable around reels. Changes machine gears, using wrenches.

Defendant also argues that Plaintiff waived her argument that the VE miscategorized her prior work by failing to object to the characterization at the hearing. Def. Br., Doc. 17. In support of this argument, Defendant cites various cases in which a court held that, by failing to object at the hearing, a claimant waived a later argument that a VE mischaracterized his or her past relevant work. *Id.* at 9. But in each of the cases that Defendant cites, the court ultimately still found, as it was required to, that substantial evidence supported the ALJ's finding about the past relevant work. *See Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 16555990, at *3 (M.D. Fla. Sept. 23, 2022) ("Contrary to Plaintiff's argument, the ALJ's finding that Plaintiff's real estate agent work was performed as substantial gainful activity in 2006 was based on substantial evidence."); *Cooper v. Comm'r of Soc. Sec.*, No. 6:18-cv-1352-ORL-37-LRH, 2019 WL 3097541, at *8 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 6:18-cv-1352-ORL-37-LRH, 2019 WL 3082950 (M.D. Fla. July 15, 2019) ("[T]here was substantial evidence to support the ALJ's decision as to this issue in this case.); *Schlegel v. Comm'r*

---

Unclamps and hoists full reels from braiding, winding, and other fabricating machines, using power hoist. Rolls reels to other work areas or to storeroom. Moves wire, rubber, and other raw materials from storage to work area, using handtruck.

Production Helper, DOT 691.687-010. This is significantly different than Plaintiff's described role of moving light paper products between machines. R. 36-37.

*of Soc. Sec.*, 6:16-cv-1236-ORL-DCI, 2017 WL 2379811, at *3 (M.D. Fla. June 1, 2017) ("Substantial evidence existed to support the ALJ's determination that Claimant's position as a kitchen helper was substantial gainful activity . . . ").

Here, I cannot reach that same conclusion. Plaintiff's description of her prior work—the only evidence in the record about the nature of that work—undermines rather than supports the VE's testimony that Plaintiff previously worked as a "Packer" as defined by the DOT. The ALJ did not resolve the inconsistency. Thus, the ALJ erred in considering whether Plaintiff could perform that job at Step Four of the analysis.

Defendant does not contest Plaintiff's argument that the ALJ erred at Step Five by finding that Plaintiff was 49 rather than 50 years old. Def. Br., Doc. 17. This error is significant because, at Step Five, age is a factor that the ALJ must consider in determining a person's ability to adjust to other work, and an individual who has the ability to adjust to other work is not disabled. 20 C.F.R. §§ 404.1563(a), 416.963(a). A 49-year-old is classified as "younger," while a 50-year-old is classified as "closely approaching advanced age."  20 C.F.R. §§ 404.1563(c)-(d); 416.963(c)-(d). The SSA generally does not consider that a "younger" claimant's age will seriously affect her ability to adjust to other work. 20 C.F.R. §§ 404.1563(c); 416.963(c). But, for a person "closely approaching advanced age," the SSA considers that the claimant's age, along with severe impairments and limited work experience, may seriously affect her

ability to adjust to other work. 20 C.F.R. §§ 404.1563(d); 416.963(d). Given the error at Step Four, the ALJ's error as to Plaintiff's age is not moot as Defendant argues. Therefore, remand is appropriate. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (citation omitted) (A litigant waives arguments that were "available, but not pressed").

## V.    Conclusion

For the reasons stated:

(1)    This case is REMANDED to the SSA for further proceedings.

(2)    On remand, the ALJ shall further develop the record as to her findings relating to the proper DOT classification for Plaintiff's prior work. To the extent that Plaintiff's description of her prior work does not match the DOT definition the ALJ ultimately ascribes to the job, the ALJ shall explain (1) why she rejected Plaintiff's testimony about her prior work or, if she did not, (2) why claimant's prior work could still fairly be categorized as the DOT job that does not match the Plaintiff's description. On remand, the ALJ shall also use Plaintiff's correct age in its analysis at Step Five.

(3)     The Clerk of Court shall enter judgment in the Plaintiff's favor,

terminate any pending motions, and close the case.

ORDERED on March 4, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge